FILED
2009 DEC 17 PM 3: 39
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF | CASE NO.: 5:09mc117 |
| THE SEARCH OF FAIR FINANCE, FAIR FINANCIAL, OBSIDIAN ENTERPRISES AND TIMOTHY S. DURHAM | JUDGE: Magistrate Judge Pearson |
| | MOTION TO UNSEAL SEARCH WARRANT DOCUMENTS |

Now come The Akron Beacon Journal ("Beacon") and the Indianapolis Star ("Star," collectively "Newspapers"), by and through undersigned counsel, and respectfully move this Court for an Order unsealing Affidavits, Search Warrants and any other documents (collectively "Search Warrant Documents") executed under seal pertaining to the search of Fair Finance, Fair Financial, Obsidian Enterprises and Timothy S. Durham (collectively "Fair Finance.") The grounds for this Motion are more fully set forth in the Memorandum of Law attached.

Respectfully submitted,

/s/ Karen C. Lefton
KAREN C. LEFTON (0024522)
KERRI L. KELLER (0075075)
Brouse McDowell, LPA
388 S. Main Street, Suite 500
Akron, Ohio 44311
Phone: 330-535-5711
Fax: 330-253-8601
klefton@brouse.com
kkeller@brouse.com

*Attorneys for the Akron Beacon Journal and Indianapolis Star Newspapers*

1

## MEMORANDUM OF LAW

### Statement of Facts

Only five months after notorious investment scam artist Bernie Madoff was sentenced to 150 years in prison, hundreds of elderly investors in Akron, Ohio, are worried that they, too, might have fallen victim to a Ponzi scheme. For them, the federal investigation of Fair Finance and its owner, Timothy S. Durham, is déjà vu all over again. Their investments, which are not federally insured, may be gone forever. The rich and politically well-connected person responsible may not be held accountable.

For them, transparency in the investigation is the only salve, a transparency that has so far been elusive due to the government's failure to file executed search warrants, failure to file affidavits in support of search warrants and failure to file other supporting documentation in connection with the search of Mr. Durham's Indianapolis, Indiana, office at Chase Tower and his Akron, Ohio, offices of Fair Finance.

### Company History

Fair Finance, a 75-year-old Company with eight offices in and around Akron, was authorized to sell securities and billed itself as "a leader in Contract Factoring and Accounts Receivable Management for sales and service companies throughout the United States." Federal Reserve records show 6,400 transactions from May 2004 to May 2009, in which millions of dollars from Fair Finance flowed to its parent company in Indiana, Fair Holdings, and then to 21 companies controlled by Mr. Durham and Fair Financial co-owner James Cochran. In 907 transactions over that five-year period, $84.2 million allegedly went from Fair Finance to Fair Holdings, much of it eventually paying for expensive trips, cars and property for Mr. Durham, who assumed ownership of the Company in 2002. Fair Finance has sold about $200 million in investment certificates to Ohio investors, and had requested approval from the Ohio Division of

2

Securities to sell up to $250 million in new securities.  That request is on hold.  And so, apparently, is legal action to reclaim the investors' lost funds.

**Criminal investigation**

Federal agents believe that Mr. Durham, through Fair Finance, recruited investors and simply used newly invested money to pay high interest rates to the earlier investors or to himself and his colleagues. On Tuesday, November 24, 2009, federal agents served search warrants at the Indianapolis office of Obsidian Enterprises Inc. and the Akron offices of Fair Finance Co., apparently confiscating all of the companies' computers and business records.  On or around that date, federal officials filed a Complaint in the U.S. District Court for the Southern District of Indiana, Indianapolis Division, to seize property owned by Mr. Durham.[1]  One week later, they withdrew the Complaint. Now, there is no active legal action and nothing to assuage the anxious investors, only a curious public demanding answers. Federal officials have told reporters for both Newspapers that search warrants were executed for the offices.  (See stories attached as Exhibits A and B.)  However, in violation of the Federal Rules of Crim.P. 41(i) and Local Rule 5.2, they filed nothing.  Timothy M. Morrison, U.S. Attorney for the Southern District of Indiana, confirmed to Beacon Journal reporter Jim Mackinnon that Search Warrant Documents[2] exist and are "sealed."  He unlawfully declined to disclose the location of the court documents – whether in Indiana or Ohio or both. In addition, he asserts that the government intends for the Search

---

[1] *United States of America v. Real Property in Hamilton County, Indiana, at 14353 East 113th Street, Fortville, et al.; Case No. 1:09-cv-1460 SEB-DML.*

[2] The Newspapers believe that court documents in this case include search warrants, affidavits in support of search warrants and perhaps other documentation.  It is not possible to know with certainty, however, because cover sheets pertaining to those documents were not docketed. This brief will refer to "Search Warrant Documents" throughout for ease of reference, and the Newspapers intend their Motion to Unseal to include all court documents pertaining to Fair Finance, Fair Financial, Obsidian Enterprises and Timothy Durham currently under seal.

3

Warrant Documents to remain sealed at least until charges are filed, indefinitely if charges are never filed.

Given the magnitude of the prospective loss to investors in Ohio and the taint on the political process for the government of Indiana, there is significant overriding public interest in the disclosure of the Search Warrant Documents.

**Intense Community Interest**

In the three weeks since the raids on the Indianapolis and Akron offices, the Newspapers in those communities have published more than two dozen stories about the situation – many on page A1 and most generating dozens of additional calls and e-mails to the media. (See Akron Beacon Journal stories attached as Exhibit A; Indianapolis Star stories attached as Exhibit B.) Reporters for the Akron Beacon Journal spoke with 12 investors who admitted losing a total of $814,500.00 that they had invested with Fair Finance. Many are still hoping for a recovery. Reporters for the Indianapolis Star wrote about Mr. Durham's close connections to the Republican power brokers of Indiana, including the governor, who received nearly $200,000.00 in campaign contributions from Mr. Durham, and the county prosecutor, whom Mr. Durham had favored with $160,000.00 in campaign contributions, a $4,500.00 trip to the Super Bowl and other benefits. In all, Mr. Durham has made nearly a million dollars in political donations, mainly to Republican causes. His wealth, power and influence have caused Indiana citizens to question the integrity of their political leaders. Transparency in the investigation into Mr. Durham's financial affairs can only serve to enhance the public's faith in its government. The sealing of such documents only serves to undermine the integrity of the judicial process and enhance the perception that Mr. Durham's political connections will save him.

As a result of this news coverage, the Beacon Journal has received inquiries from about 70 people who want more information. Ideally, they'd like help recovering their money. But at

a minimum, they want to learn everything they can about where that money may be and their prospects for seeing it again. One Beacon Journal reporter says this story has generated more response than any in his memory. (See affidavit of Jim Mackinnon, attached as Exhibit C.) In the eight-county area served by the Indianapolis Star, nearly a half million people read the newspaper daily – more on Sundays. There have been hundreds of e-mails and on-line comments. The editor has attended an average of one meeting every work day over the last three weeks with community leaders and groups. This story has been a topic of concern at 90 percent of those meetings since it became public on November 25, 2009 – the day after the initial raids. (See affidavit of Dennis Ryerson, attached as Exhibit D.)

## LAW AND ARGUMENT

**I.** **The presunption of openness to court proceedings extends to court documents and can be overcome only by showing that closure is necessary to achieve a compelling governmental interest and is narrowly tailored to serve that interest.**

The United States Supreme Court set the standard for openness in judicial proceedings in *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555 (1980) and *Press-Enterprise v. Superior Court of California,* 464 U.S. 501 (1984) *(Press-Enterprise I)*. This openness has "community therapeutic value," as described in *Richmond,* 448 U.S. at 570. Criminal acts often provoke public concern, even outrage and hostility; this in turn generates a community urge to retaliate and a desire to have justice done. *Press- Enterprise I,* 464 U.S. at 509. When the public is aware that the law is being enforced and the criminal justice system is functioning, an outlet is provided for these understandable reactions. Proceedings held in secret would deny this outlet and frustrate the broad public interest; by contrast, public proceedings vindicate concerns of the victims and the community in knowing that offenders are being brought to account for their criminal conduct. *Id., internal cites omitted.*

5

The United States Supreme Court has been clear in holding that closed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness. Where the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is *necessitated by a compelling governmental interest*, and is *narrowly tailored* to serve that interest. *Press-Enterprise I,* 464 U.S. at 510, citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606-607 (1982). *(Emphasis added.)* The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest must be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

Courts have held that judicial records are an extension of judicial activity and that the rules requiring openness of court proceedings extend to openness of court documents. The sealing of court documents requires the same standard as the closing of a court proceeding. While such sealing is not absolutely precluded, it must be rare and only for cause shown that outweighs the value of openness. In addition to articulating the findings with the requisite specificity to allow for judicial review, a party seeking sealing must demonstrate that it has considered less invasive alternatives and that the court should seal only such portions of documents as are necessary to achieve the state's compelling interest. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978); *Press-Enterprise I, supra,* 464 U.S. 501.

**II.    Where public interest in recovering investments and ensuring political integrity outweighs government's right to secrecy, there is a common law right of access to the Search Warrant Documents.**

6

The U.S. Supreme Court has recognized that the press and the public have a common law right of access to judicial records. *Nixon v. Warner Communications, Inc.*, 435 U.S. at 597-99. This presumptive right of access to judicial documents and records is premised on the public's right to be informed of the operations of the government and to an open court system. *United States v. Criden,* 648 F.2d 814, 819 (3rd Cir. 1981), citing *Nixon, supra.* Search Warrant Documents are judicial records, subject to a strong common law presumption of openness, which can be overcome only when the party seeking closure demonstrates that the factors opposing access outweigh those favoring it. *United States v. Smith,* 787 F.2d 111, 115 (3rd Cir.1986). [See also *In re The Baltimore Sun Co. v. Honorable Clarence E. Goetz,* 886 F.2d 60, 63 (4th Cir.1989).] Factors found to outweigh the presumption of access include a risk of harm to third parties and preserving the integrity of the on-going investigation into the crime. See *Criden, supra,* 681 F.2d 921; *In re Search Warrant for Secretarial Area,* 855 F.2d 569, 574 (8th Cir. 1988).

Here, the evidence indicates that *failure to disclose* the search warrants and supporting documentation is far more likely to harm third parties – innocent investors in Ohio – than any potential harm caused by such disclosure. The innocent investors, some of whom may take legal action on their own to recover funds, have a right to the search warrant information that outweighs any right by Mr. Durham or others to keep his alleged misdeeds private.

If the government believed that disclosure of the search warrant information would jeopardize an on-going investigation, it should have offered evidence of such disclosure publicly. Given that it filed and withdrew a complaint to seize Mr. Durham's property all within seven days, and that there is no current criminal or civil action pending, it is highly unlikely that the government would be able to meet its burden. Indeed, absent any action by the government, Search Warrant Documents must be released to provide information to the innocent investors

7

who now must undertake recovery on their own. Keeping such information private only serves to protect Mr. Durham, if indeed wrongdoing occurred, and the government, if indeed it failed in its oversight duties.

Time is of the essence, as the eight Fair Finance offices in Ohio have been closed since November 24, 2009. Investors are unable to get access to their funds. The release of any court documentation that sheds light on the whereabouts of hundreds of millions of dollars of investors' money would be *advantageous* to those third parties, rather than harmful to them. Therefore, the government cannot meet its burden of showing that unsealing will harm third parties.

The government also may argue that sealing Search Warrant Documents is essential to protecting the integrity of an on-going investigation. However, as mentioned above, the seizure action has been dismissed; the government has access to all the information it sought, as does Mr. Durham. Indeed, only the public is without access to those important documents, and it is the innocent investors who need it most.

Under *Nixon*, the common law qualified right of access is committed to the sound discretion of the judicial officer who issued the warrant. When a court rules that a search warrant must remain sealed, the interest to be protected must be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered. *Press-Enterprise I*, 464 U.S. at 510. Given that the Newspapers, the innocent investors and the public are unable to ascertain with any degree of certainty what has been sealed and where, it is plain that the actions in this case did not meet the standards set out by the United States Supreme Court in *Press-Enterprise I*. There is no evidence on the record to indicate that the common law presumption of openness of judicial documents, which includes Search Warrant Documents, is outweighed by the government's interest in protecting the integrity of an investigation or by the

potential harm to third parties posed by dissemination of the search warrant information. See *id.* [See also *In Re Search Warrant for Second Floor Bedroom,* 489 F. Supp. 207 (D.R.I. 1980), granting motion to unseal affidavit filed in support of application for search warrant in view of government's failure to demonstrate real possibility of harm arising out of disclosure and in view of fact that government's fears concerning disclosure of grand jury proceedings were purely speculative.] The government has failed, at least publicly, to offer any evidence of either result, thereby running afoul of the common law and requiring this court to unseal all Search Warrant Documents in this case.

### III. In the absence of controlling precedent in the Sixth Circuit Court of Appeals, this Court may find a First Amendment right of access to these Search Warrants Documents.

The Circuit Courts of Appeals are split as to whether a right of access to search warrants and their supporting documentation exists under the First Amendment. The Newspapers have discovered no definitive precedent from the Sixth Circuit Court of Appeals, and the four circuits that have made such a ruling have reached various conclusions. There is consensus, however, on the standard to be used in analyzing the issue. The party seeking a First Amendment right of access must make a two-part threshold showing known as the experience and logic tests: First that the place and the process have historically been open to the press (experience); second, that the public access plays a significant positive role in the functioning of the process in question (logic). *Press-Enterprise II,* 478 U.S. 1, 8 (1986). Virtually every court addressing the question of press access to judicial processes or documents has used the *Press-Enterprise II* test, even if it is not referred to as such. *In the Matter of 2 Sealed Search Warrants,* 710 A.2d 202, 207 (Del. Super. 1997).

9

Regarding the first prong of the test, the question of whether the process has historically been open to the press is answered by Federal Rule Crim. P. 41(i)[3], which provides that all of the papers concerning the search warrant be filed with the clerk:

> "Return of Papers to Clerk: The federal magistrate before whom the warrant is returned shall attach to the warrant a copy of the return, inventory and all other papers in connection therewith and shall file them with the clerk of the district court for the district in which the property was seized."

This is the rule; any exception to this rule must be rare, must be narrowly tailored, and must achieve a compelling state interest. *Press-Enterprise I, supra,* 464 U.S. at 501.

Moving on to the second prong, whether public access plays a significant positive role in the functioning of the process in question, the Newspapers believe that transparency enhances public confidence in the judicial system, and that public confidence is essential to a working judiciary and to a thriving democracy. While we acknowledge that some would prefer to adjudicate in the dark, the Newspapers fervently agree with Judge Damon J. Keith that "Democracies die behind closed doors." *Detroit Free Press v. Ashcroft,* 303 F. 3d. 681 (6th Cir. 2002).

As the Court held in *United States v. Content of Nationwide Life Insurance Co. Account No. X0961,* 2006 WL 971978 (S.D. Ohio 2006), district courts enjoy considerable discretion in determining how best to manage their records and files *See, e.g., Knoxville News-Sentinel Co. v. Knoxville Journal Corp.,* 723 F.2d 470, 473 (6th Cir 1983) (internal citations omitted). However, that discretion is "circumscribed" by the traditional and "presumptive right of the public to inspect and copy judicial documents and files." *Id. At 473-74* (Internal citations omitted). Thus, courts have the qualified "power to seal their records *when interests of privacy outweigh the public's right to know." Id.* at 474. In *Nationwide,* the Court determined that the

---

[3] That section of the Federal Rules is now (i), but it was (g) when quoted in the cases on this issue so this brief continues to refer to it as (g) when quoting cases to avoid confusion.

10

"public's interests in an unsealed record trump Claimants' putative interests in keeping the record sealed. "[T]he law is clear: the prospect that disclosure of unproven allegations will expose a party to reputational or (by extension) commercial harm does not outweigh the common law presumption of public access to court records. . . . The [Sixth] Circuit has also suggested that the public's interest in disclosure is particularly likely to 'outweigh [][a] defendant's interest in avoiding adverse publicity' where both the underlying litigation and specific material at issue *involve matters of citizen or consumer concern.*" *Id.*, citing *Knoxville News*, 723 F.2d at 477. (Emphasis added.) The closure of Fair Finance, the government search of its offices, and the seizure of its records – not to mention the whereabouts of investors' money – are matters of utmost citizen and consumer concern. Indeed, as Affidavits[4] filed with this Motion attest, the Newspapers are hard pressed to find any topic in the news that is currently of greater concern.

See also *In the Matter of Search Warrants for National Builders Corporation*, 833 F. Supp. 644 (N.D. OH. 1993), in which the Court held that "[t]he decision to seal warrant papers is within the sound discretion of the judicial officer who issued the warrant, and is appropriate if it is 'essential to preserve higher values and is narrowly tailored to serve that interest'. Alternatives to sealing, such as redaction, must be considered." (Citing *Baltimore Sun v. Goetz*, 866 F.2d at 65-66 and *Press-Enterprise I*, 464 U.S. 501.) It appears that even if a First Amendment right of access were recognized in the Sixth Circuit, a showing of "compelling governmental interest" in an ongoing investigation could justify sealing an affidavit until the conclusion of the investigation. *Id.*

The Eighth Circuit Court of Appeals recognized a qualified right of access under the First Amendment, requiring the government to show that sealing is necessary to protect a compelling government interest and that less restrictive alternatives are impracticable. See *In the Matter of*

---

[4] Attachments C and D are affidavits from Jim Mackinnon, business reporter for the Beacon Journal and Dennis Ryerson, editor and vice president of the Indianapolis Star.


"public's interests in an unsealed record trump Claimants' putative interests in keeping the record sealed. "[T]he law is clear: the prospect that disclosure of unproven allegations will expose a party to reputational or (by extension) commercial harm does not outweigh the common law presumption of public access to court records. . . . The [Sixth] Circuit has also suggested that the public's interest in disclosure is particularly likely to 'outweigh [][a] defendant's interest in avoiding adverse publicity' where both the underlying litigation and specific material at issue *involve matters of citizen or consumer concern.*" *Id.*, citing *Knoxville News*, 723 F.2d at 477. (Emphasis added.) The closure of Fair Finance, the government search of its offices, and the seizure of its records – not to mention the whereabouts of investors' money – are matters of utmost citizen and consumer concern. Indeed, as Affidavits[4] filed with this Motion attest, the Newspapers are hard pressed to find any topic in the news that is currently of greater concern.

See also *In the Matter of Search Warrants for National Builders Corporation*, 833 F. Supp. 644 (N.D. OH. 1993), in which the Court held that "[t]he decision to seal warrant papers is within the sound discretion of the judicial officer who issued the warrant, and is appropriate if it is 'essential to preserve higher values and is narrowly tailored to serve that interest'. Alternatives to sealing, such as redaction, must be considered." (Citing *Baltimore Sun v. Goetz*, 866 F.2d at 65-66 and *Press-Enterprise I*, 464 U.S. 501.) It appears that even if a First Amendment right of access were recognized in the Sixth Circuit, a showing of "compelling governmental interest" in an ongoing investigation could justify sealing an affidavit until the conclusion of the investigation. *Id.*

The Eighth Circuit Court of Appeals recognized a qualified right of access under the First Amendment, requiring the government to show that sealing is necessary to protect a compelling government interest and that less restrictive alternatives are impracticable. See *In the Matter of*

---

[4] Attachments C and D are affidavits from Jim Mackinnon, business reporter for the Beacon Journal and Dennis Ryerson, editor and vice president of the Indianapolis Star.

*the Search of Eyecare Physicians of America,* 910 F. Supp. 414, 420 (N.D. Ill. 1996), citing *Secretarial Area,* 855 F.2d 569.

The U.S. District Court for the Northern District of Illinois, Eastern Division, was most concerned with protecting the common law right to inspect and copy judicial records as recognized by the Supreme Court in *Nixon.* The Illinois federal court did cite *In the Matter of the Search of Wag-Aero, Inc.,* 796 F. Supp. 394 (E.D.Wis. 1992), in which the court held that the subject of a search has the right to unseal the affidavit in order to determine if it wishes to challenge the search warrant. But then it went on to endorse the approach taken by the Fourth Circuit in *In re Baltimore Sun Co. v. Goetz,* 886 F.2d 60 (4th Cir. 1989), wherein the court noted that Fed.R.Crim.P. 41(g)[5] facilitates the common law qualified right of the press and public to access to judicial records by requiring the judicial officer who issues the warrant to file all papers relating to the warrant in the clerk's office. The *Goetz* court went on to hold that, "the judicial officer may deny access when sealing is essential to preserve higher values and is narrowly tailored to serve that interest," but that "the judicial officer must consider alternatives to sealing the documents. This ordinarily involves disclosing some of the documents or giving access to a redacted version." *Wag-Aero,* 796 F. Supp. 415, citing *Goetz,* 886 F.2d at 65-66.

### IV.  Search Warrant Documents were not properly filed pursuant to Fed Rule Criminal P. 41 and Local Rule 5.2

First, all search warrant papers must be filed pursuant to Fed. Rule Criminal P. 41(i), as mentioned above. And in the highly rare, but not unprecedented, cases where the government is able to show that sealing is necessary to achieve a compelling governmental interest and that sealing is narrowly tailored to serve that interest, there must be a cover sheet publicly filed to document the sealed records, pursuant to Local Rule 5.2.

---

[5] It was (g) then, now (i).

In addition, Local Rule 5.2 specifically governs the filing of documents under seal, stating that: "No document will be accepted for filing under seal unless a statute, court rule or prior court order authorizes the filing of sealed documents. If no statute, rule or prior order authorizes filing under seal, the document will not be filed under seal." The rule goes on to require that "if the sealing of the document purports to be authorized by court order, the electronically filed sealed document shall be linked to the order authorizing the sealing," thus giving the public notice that such documents are sealed and on what basis. Such public docketing is designed to inform the public of the existence of the records and the basis for their sealing, thereby providing the grounds by which an objection to such sealing may be made. The rule goes on to state that "if the order does not authorize the filing under seal, or the electronic filing is not linked to the order, or in the case of manual filing no order is provided, *the Clerk will unseal the documents."* (Emphasis added.)

In this case, it is believed that Search Warrant Documents exist in the Northern District of Ohio because searches were carried out there, according to the U.S. District Attorney for the Southern District of Indiana. However, no other information is known, and no public court file exists. The public is aware that search warrants have been issued, executed and returned to the Court only because a government official has told the Newspapers that it is so. These documents may occupy a place in someone's bottom drawer. No one knows. What is certain, however, is that the rules of this Court require notice of such sealing to be docketed publicly to ensure the transparency on which the American judicial system is based and to ensure that the government can demonstrate both that the sealing is necessary to achieve a compelling state interest and that there is no less invasive means of achieving that interest.

In *Second Floor Bedroom,* 489 F.Supp. at 208, the U.S. District Court for the District of Rhode Island articulated its "deepest conviction that a vigorous and free press, acting on the

basis of the maximum access to governmental information, serves as a constant check on the excesses, mistakes and wrongdoing of all branches of government." While the Newspapers do not contest a District Court's inherent power to seal Search Warrant Documents, such power exists *only if* the government can make the requisite demonstration of harm resulting from disclosure. Respectfully, the government cannot (and seemingly has not) done so. It is essential that the government demonstrate a *real possibility of harm* before the Court takes the unusual step of sealing search warrant documents. The *mere possibility* of harm alleged is not sufficient to outweigh the established policy embodied in Rule 41(i) and Local Rule 5.2. And in this case, of course, there has been no demonstration of harm, nor even the suggestion of it, except harm to the innocent investors who want to reclaim their money.

In *Eyecare,* 910 F. Supp. at 421, while the court denied a motion to unseal an affidavit in support of the search warrant, it also directed the clerk to file ancillary documentation on the record. "Clearly under Rule 41(g), the warrant, the return, the inventory and all other papers in connection therewith should be filed with the clerk, in the Clerk's office. In [the court's] view, where a motion to seal the affidavit is made and granted, the warrant, the motion to seal, the order to seal, the return and the inventory are presumptively available to the public, including the movant, and must be placed in the court file." Therefore, based on the government's failure to properly file any documents pursuant to Fed. Rule Crim. P. 41 and Local Rule 5.2, all Search Warrant Documents pertaining to Fair Finance and/or Timothy S. Durham must be disclosed.

V. **Even if this court finds that the government has met its burden of showing that sealing Search Warrant Documents is necessary to achieving a compelling government interest, the Court should review the documents *in camera* to see whether sealing is narrowly tailored to meet the government's needs or whether the documents can be redacted and released. In addition, sealing must have an end date.**

Although Fed.R.Crim.P. 41(i) is silent about the time search warrant papers should be filed with the clerk, the Fourth Circuit Court of Appeals held in *Goetz,* 866 F.2d at 65, that they must be filed "within a reasonable time after the warrant is executed. It is error for a district court to conceal a motion for closure of court proceedings instead of docketing the motion. Concealing warrant papers after the warrant has been executed would also be error. If the content of the papers should not be disclosed, they should be placed under seal and docketed." (Internal cites omitted.) (See also *Eyecare,* 910 F. Supp. at 417, "The extraordinary step of sealing judicial records, however, cannot last forever.")

In accordance with the principles explained in *Nixon,* the common law qualified right of access to the warrant papers is committed to the sound discretion of the judicial officer who issued the warrant. Taking into consideration, as *Nixon* requires, all of the relevant facts and circumstances, the officer may file all or some of the papers under seal for a stated time or until further order. Or, as frequently is done, he may conclude that the circumstances do not justify secrecy. The judicial officer's decision to seal or to grant access is subject to review under an abuse of discretion standard. *Nixon,* 435 U.S. at 599.

**<u>Conclusion</u>**

The overriding public interest in recovering millions of dollars in investments for thousands of investors, as well as the overriding public interest in the integrity of the political system in which one influential person may have destroyed thousands of retirement dreams, require that all documents issued in connection with Fair Finance and Timothy S. Durham be public. No criminal or civil case is active. The public has a right to know what the government searched for and what it found. Withholding that information violates the Newspapers' common law right to access judicial records, as well as their First Amendment rights. For all these reasons, the Newspapers respectfully urge this Court to unseal any and all Search Warrant

Documents issued pertaining to Timothy S. Durham, Fair Finance, Fair Financial, Obsidian Enterprises or any affiliated Company, and to order the government to file such records as required by Fed. Rule Crim. P. 41(i).

In the alternative, if the Court denies this motion, the Newspapers respectfully request that this Court articulate its findings on the record as required by the U.S. Supreme Court in *Press-Enterprise I.*

Respectfully submitted,

/s/ Karen C. Lefton
KAREN C. LEFTON (0024522)
KERRI L. KELLER (0075075)
Brouse McDowell, LPA
388 S. Main Street, Suite 500
Akron, Ohio 44311
Phone: 330-535-5711
Fax: 330-253-8601
klefton@brouse.com
kkeller@brouse.com

*Attorneys for the Akron Beacon Journal and the Indianapolis Star Newspapers*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served electronically on this 17th day of December, 2009, upon:

Timothy M. Morrison, U.S. Attorney for the Southern District of Indiana
Winfield D. Ong, Assistant United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204
Phone: 317-226-6333
Fax: 317-226-6125
Winfield.ong@usdoj.gov

/s/ Karen C. Lefton
Karen C. Lefton (0024522)
BROUSE MCDOWELL, L.P.A.

767495