UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF FAIR FINANCE, FAIR FINANCIAL, OBSIDIAN ENTERPRISES, AND TIMOTHY S. DURHAM, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.  5:09MC117

JUDGE SARA LIOI
Magistrate Judge George J. Limbert


INTERIM REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |

Before the Court is the following motion: Interested Party United States of America's ("Government") motion for leave to re-file declaration of Special Agent Halliden as an ex parte document for in-camera review only by the Court.  ECF Dkt. #14.  For the following reasons, the undersigned recommends that the Court GRANT this motion.

## I.    PROCEDURAL HISTORY

On December 17, 2009, The Akron Beacon Journal ("Beacon") and The Indianapolis Star ("Star") filed a motion in this Court to unseal search warrant documents, including affidavits, search warrants, and any other documents, executed under seal pertaining to the search of Fair Finance, Fair Financial, Obsidian Enterprises, and Timothy S. Durham (collectively "Fair Finance").  ECF Dkt. #1.  On January 4, 2010, The Beacon, The Star, The Wall Street Journal ("WSJ") and The Indianapolis Business Journal ("IBJ")(collectively "Newpapers") filed an amended motion to unseal the search warrant documents.  ECF Dkt. #4.  In this motion, the Newspapers state that hundreds of

elderly investors in Akron, Ohio are worried that they have fallen victim to a Ponzi scheme allegedly orchestrated by Fair Finance, a 75 year-old company with eight offices in and around Akron, Ohio, which was authorized to sell securities. *Id*. at 2.  The Newspapers allege that the Federal Reserve documented that over 6,400 transactions have occurred from May 2004 to May 2009 in which millions of dollars have flowed from Fair Finance to its parent company in Indiana, and then to 21 companies controlled by Mr. Durham and his partner. *Id.*  The Newspapers further aver that questions have arisen as to Fair Finance's ability to repay investors who had purchased the uninsured securities after reports surfaced that since Mr. Durham bought the consumer-loan business in 2002, he used it like a "personal bank" to fund mostly unsuccessful business interests. *Id.* at 3. The Newspapers cite an October 26, 2009 IBJ article which indicated that Mr. Durham and other parties owe Fair Finance more than $168 million. *Id.*  The Newspapers note that national interest has arisen over the investors' concerns and that "[a]t this stage, the public has lots of questions, and it is seeking answers." *Id.*

In their motion, the Newspapers go on to describe a criminal investigation, indicating that federal agents served warrants on November 24, 2009 at the Indianapolis office of Obsidian Enterprises, Inc., owned by Mr. Durham, and the Akron offices of Fair Finance.  ECF Dkt. #4 at 3. The Newspapers indicate that agents apparently seized all of the companies' business records and computers and filed a criminal complaint to seize the property owned by Mr. Durham. *Id.*  The Newspapers further allege that one week later, the criminal complaint was withdrawn and the public, including the four Newspapers that reported on the search warrants, was left wondering about the investigation and any legal action. *Id.* at 4.

The Newspapers allege that the government violated Rule 41(i) of the Federal Rules of Civil Procedure and Local Rule 5.2 since no documents were filed with regard to the criminal complaint

and search warrants and prior filings were removed.  ECF Dkt. #4 at 3.  The Newspapers further allege that Timothy M. Morrison, the United States Attorney for the Southern District of Indiana, confirmed to an ABJ reporter that search warrant documents exist, but they are sealed.  *Id.* at 4.  Attorney Morrison further indicated that the government intends for the search warrant documents to remain sealed at least until charges are filed, and may remain sealed indefinitely if charges are never filed.  *Id.*

On January 17, 2010, after the Newspapers filed their amended motion to unseal the search warrant documents, the Government filed a motion for leave of Court and authorization to make a limited disclosure of information pertaining to the sealed documents.  ECF Dkt. #8.  In this motion, the Government informed the Court that in order to properly respond to the Newspapers' amended motion to unseal with regard to violations of Rule 41(i) and the Local Rule, it needed to disclose limited information that had been sealed by the Court.  *Id.* at 2.

On January 21, 2010, the Government filed a motion for leave to file a declaration under seal that supported its response in opposition to the amended motion to unseal.  ECF Dkt. #9.  In this motion, the Government requested that the Court issue an order allowing it to file a declaration under seal from the FBI Special Agent responsible for the investigation, Special Agent Dennis Halliden,  which would highlight sensitive details in the search warrant affidavit regarding the ongoing investigation and show how disclosure of this information would seriously hamper and impede the ongoing investigation.  *Id*. at 2.

On January 21, 2010, United States Magistrate Judge Benita Pearson of this Court granted both of the Government's motions.  ECF Dkt. #s 10, 11.  On January 22, 2010, the Government, after being informed that the Newspapers were seeking access to the sealed declaration, filed a motion to withdraw Special Agent Halliden's declaration pending the Court's ruling on the

Government's instant motion to re-file the declaration as an ex parte document intended for in-camera review only by the Court.  ECF Dkt. #s 13, 14.  The Government had filed the instant motion for leave to re-file Special Agent Halliden's declaration as an ex parte document for in-camera review only by the Court on the same date.  ECF Dkt. #14.

On January 24, 2010, Magistrate Judge Pearson granted the Government's motion to withdraw the sealed declaration of Special Agent Halliden pending the Court's ruling on the motion for leave to re-file it as an ex parte document for in-camera review by the Court.

On January 26, 2010, the Newspapers filed opposition to the Government's motion for leave to re-file Special Agent Halliden's declaration as an ex parte document for in-camera review only by the Court.  ECF Dkt. #15.  On February 2, 2010, the Government filed a reply.  ECF Dkt. #19.

On January 28, 2010, the Newspapers filed a motion for extension of time within which to file a reply in support of the amended motion to unseal the search warrant documents seven days after the Court rules on the motion for leave to re-file Special Agent Hallident's declaration.  ECF Dkt. #16.  Magistrate Judge Pearson denied this motion as moot pending further Order of the Court.

On February 2, 2010, the Government filed a notice of potential jurisdictional defect, indicating that an authorization from the District Court was necessary in order for the pending motions to be ruled upon by a United States Magistrate Judge since the parties did not consent to the jurisdiction of the Magistrate Judge and the case was never referred to the Magistrate Judge. ECF Dkt. #20.  On February 3, 2010, Magistrate Judge Pearson requested that the Clerk's Office reassign the instant case to a District Judge.  ECF Dkt. #21.  United States District Court Judge Sara Lioi was assigned to the case, the undersigned was thereafter randomly assigned as the Magistrate Judge, and Judge Lioi referred the instant motion to the undersigned for the preparation of a Report

and Recommendation on any and all motions.  ECF Dkt. #24.

On February 11, 2010, the undersigned held a hearing on the amended motion to unseal the search warrant documents and the Government's motion for leave to re-file Special Agent Halliden's declaration as an ex parte document for an in-camera review only by the Court.  ECF Dkt. #26.

At the hearing, the undersigned noted that the Newspapers had not filed a reply memorandum in support of its amended motion to unseal the search warrant documents.  Counsel for the Newspapers responded that the Newspapers had requested leave to file their reply after the ruling on the Government's instant motion to re-file the FBI Special Agent's declaration.  ECF Dkt. #16.  However, Magistrate Judge Pearson had denied that motion for leave as moot pending further Order of the Court.

Accordingly, the undersigned's instant Report and Recommendation addresses only the Government's motion to re-file the declaration by FBI Special Agent Dennis Halliden.  ECF Dkt. #14.  In this motion, the Government seeks leave to re-file Special Agent Halliden's declaration, but as an ex parte document for in-camera review only by the Court and not by anyone else, including the Newspapers or their counsel.  *Id.* at 1-2.  At the hearing, the Government represented that Special Agent Halliden's declaration will show the Court the sensitive details regarding an ongoing criminal investigation and how disclosure of the initial affidavit would impede this ongoing investigation. The Government offers the declaration in support of keeping the search warrant and original search warrant documents under seal.

The Newspapers oppose the re-filing of the declaration as an ex parte document for in-camera review of the declaration, arguing that it is unfair to submit a sealed declaration in order to support an already sealed affidavit.  They assert that they have no ability to respond to the

Government's motion to re-file because they are not able to see the supporting declaration or the original affidavit that the sealed declaration would support.  The Newspapers contend that the original affidavit to the criminal complaint should stand on its own and the Government should not be able to create an additional document upon which to rely in order to show the danger of disclosing the original search warrant documents.

II.     **REASONS TO GRANT THE GOVERNMENT'S MOTION TO RE-FILE DECLARATION AS AN EX PARTE DOCUMENT FOR IN-CAMERA REVIEW ONLY BY THE COURT**

A.     **IN GENERAL**

The undersigned recommends that the Court GRANT the Government's motion to re-file the declaration of Special Agent Halliden as an ex parte document for in-camera review only by the Court and no one else, including the Newspapers or their counsel.  ECF Dkt. #14.  The undersigned notes that counsel for the Government represented at the hearing on this matter that the declaration of Special Agent Halliden will provide an update as to the pending criminal investigation and will explain how disclosure of the sealed search warrant documents, including the original affidavit, would negatively impact and impede the investigation. The undersigned has not reviewed the declaration since the instant motion only concerns whether it can be re-filed as an ex parte document for the Court's in-camera review.

The undersigned further notes that other courts have accepted and reviewed unchallenged sealed ex parte documents submitted by the government in support of briefs  in opposition to motions to unseal search warrant documents by the media.  *See e.g., U.S. v. All Funds on Deposit at Wells Fargo Bank*, 643 F.Supp.2d 577, 580 (S.D.N.Y. 2009)("The Government represents, in its brief in opposition to the unsealing application and in a further ex parte submission that it requests

be maintained under seal, that it has not yet publicly filed a criminal or civil forfeiture action and that it is actively investigating matters discussed in the affidavits that Costigan seeks to unseal”); *In re Search Warrants Issued on April 26, 2004*, 353 F.Supp.2d 584, 591 (D.Md. 2004)(“To this end, the government has submitted two *ex parte* affidavits which state that unsealing the probable cause affidavit in this case would result in disclosure of the government's legal theories and results of its investigation; interfere with the investigation in that loyal employees and patients could be contacted and coached; discourage other witnesses from cooperating for fear of possible retaliation; have a detrimental effect on the well-being and business reputation of the complaining witnesses; and identify named potential subjects and targets.”); *In re Searches and Seizures,* Nos. 08-SW-0361 DAD, 08-SW-0362 DAD, 08-SW-0363 DAD, 08-SW-0364 DAD, 2008 WL 5411772, at *2 (E.D. Cal. Dec. 19, 2008), unpublished (“Finally, the government argued that in an ex parte declaration filed with the court under seal, it could explain why these search warrant affidavits should remain under seal.”).

The undersigned also points out that United States Magistrate Judge Benita Pearson is the only Judge in this District who has reviewed the original search warrant documents and the instant declaration and granted the Government's motion to seal the declaration.  ECF Dkt. #10.  While the Government filed a notice of a potential jurisdiction defect, this does not negate Magistrate Judge Pearson's capacity and capability to determine probable cause and to review documents as a judicial officer and determine whether those documents should be disclosed to the public.  Magistrate Judge Pearson's decision to seal the declaration at issue here therefore carries weight in the undersigned's Report and Recommendation.

In addition, the undersigned notes that neither the Newspapers nor the Government provide detailed analysis as to determining whether the declaration should be reviewed ex parte for in-camera review only by the Court.  In its motion to re-file, the Government provides no legal basis upon which to re-file the declaration.  ECF Dkt. #14.  In their brief in opposition to the motion to re-file, the Newspapers mention the First Amendment and the common law right of access, but only in the context of arguing support for their amended motion to unseal the search warrant documents. ECF Dkt. #15 at 2.  The Newspapers cite generally to *Weatherhead v. United States,* 157 F.3d 735, 739 (9th Cir. 1998)(attorney's fees awarded in 112 F.Supp.2d 1058 (9th Cir. 2000), with judgment vacated and case dismissed as moot in *United States v. Weatherhead*, 528 U.S. 1042 (2000)) as support for a finding that allowing ex parte in-camera review of the declaration will thwart the adversary process and should be used only as a "last resort."  *Id*. at 3.  They assert that ex parte in-camera review is unnecessary in the instant case because the Court has already reviewed the evidence before granting the Government's motion to seal the original search warrant and affidavit. *Id*. at 3-4.  The Newspapers also assert that by seeking ex parte, in-camera review by only the Court, the Government is denying them the opportunity to evaluate the government's specific reasons for sealing and to offer less burdensome alternatives.  *Id*. at 2.  The Newspapers contend that the original search warrant documents and original affidavit should stand on their own in determining the motion to unseal.

The undersigned finds that the reasons advanced by the Newspapers are not convincing. First, the undersigned agrees with the Government's reply that the *Weatherhead* case is distinguishable from the instant case because it involved litigation of requests under the Freedom of Information Act, not a request to disclose sealed court documents.  157 F.3d at 736.  Secondly,

-8-

as also pointed out by the Government, neither the undersigned nor the Honorable Sara Lioi, who is the United States District Court Judge in this case, have reviewed the instant declaration or any of the earlier sealed documents relating to the instant case.  Only United States Magistrate Judge Benita Pearson has reviewed those documents and she sealed all of the documents, including the instant declaration, until it was withdrawn.  ECF Dkt. #10.  In addition, the undersigned disagrees with the Newspapers' contention that the original search warrant documents should stand on their own in determining the amended motion to unseal because, at the time of the presentment of the search warrant documents, there was no challenge to those documents and they were presented for probable cause purposes only and not for purposes of establishing the interests of the Government versus the interests of the Newspapers in disclosing the documents.  In addition, the declaration purportedly serves to inform the Court of the status of the investigation from the date of the presentment and execution of the search warrant documents, in November 2009, to the current date, some three months later.

### B.    FIRST AMENDMENT AND COMMON LAW ANALYSIS

Further, even undertaking both a First Amendment and common law right of public access to judicial proceedings and documents analysis, the Court should grant the Government's motion to re-file.  The undersigned finds the case of *In re Search Warrant for Four Contiguous Parcels of Real Property* ("Four Contiguous Parcels") instructive.  No. 06-x-50457, 2006 WL1779436 (E.D. Mich. June 26, 2006), unpublished.  In that case, the Detroit Free Press ("Free Press") sought to intervene and unseal a search warrant and supporting documents regarding a search of a horse farm previously owned by a former Teamster official and person of interest, Rolland McMaster.  *Id.*  The government had requested approval of a search warrant and provided supporting documents in

-9-

support of the search warrant for the horse farm to search the farm for the remains of James R. Hoffa

nearly thirty-one years after Mr. Hoffa's disappearance.  *Id.*  Those documents were filed under seal

and the Free Press sought to intervene and unseal the documents based upon the First Amendment

and the common law right to access judicial documents.  *Id.*

### 1.    FIRST AMENDMENT

The court in the *Four Contiguous Parcels* case found that both the public and the press have

standing to seek access to certain pretrial criminal proceedings and documents under the First

Amendment and the common law.  2006 WL 1779436 at 1, citing *Globe Newspaper Co. v. Super.

Ct. for Norfolk County*, 457 U.S. 596, 609 n. 25, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) and *In re

Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470 474-75 (6th Cir.1983) as examples.  The court first

undertook a First Amendment analysis, stating that the public and press have a "long-standing

qualified First Amendment right of access to criminal trials" which has been applied to accessing

judicial documents as well.  *Four Contiguous Parcels*, 2006 WL 1779436 at 1-2, citing *Globe

Newspaper*, 457 U.S. at 606-607 and quoting *Brown & Williamson Tobacco Co. v. FTC,* 710 F.2d

1165, 1177 (6th Cir. 1983).  The court set forth the two-step inquiry that courts must undertake in

order to determine whether a First Amendment public right of access exists: "'First, the proceeding

must be one for which there has been a 'tradition of accessibility.'  The second consideration is

whether the access 'plays a significant positive role in the functioning of the particular process in

question.'"  *Id*., citing *In re Cincinnati Enquirer*, 94 F.3d 198, 199 (6th Cir. 1996)(quoting

*Press-Enterprise Co. v. Superior Ct.*, 478 U.S. 1, 8, 10, 106 S.Ct.  2735, 92 L.Ed.2d 1

(1986)(citations omitted).  The *Four Contiguous Parcels* court found that the first prong of the First

Amendment analysis was not met because search warrant proceedings are non-adversarial

proceedings closed to the public.  2006 WL 1779436 at 2, citing *Times Mirror Co. v. U.S.*, 873 F.2d 1210, 1213-1214 (9th Cir.1989); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64-65 (4th Cir.1989); *U.S. v. Certain Real Property Located in Romulus, Wayne County, Mich.*, 977 F.Supp. 833, 835 (E.D.Mich.1997) (Gilmore, J.); *U.S. v. U.S. Dist. Ct.*, 407 U.S. 297, 321, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); *In re Cincinnati Enquirer*, 94 F.3d at 199 (6th Cir.1996).  The court then held that even if the Free Press met the first prong of the First Amendment analysis, it did not meet the second prong.  The court found that access would not play a significant role in the functioning of the judicial process in question because no judicial proceeding was occurring except for an ongoing criminal investigative process.  *Id.* at 3.  To that end, the *Four Contiguous Parcels* court found that access to the sensitive information in the sealed affidavit would not aid the functioning of the investigation, but may very well impede the investigation and would violate the privacy and safety of witnesses and informants.  *Id.*

The undersigned finds that this analysis applies to the instant declaration as well.  Here, the declaration is offered in support of already sealed search warrant documents, including the original affidavit supporting the warrant.  According to the Government, the declaration contains specific information concerning how disclosure of the sealed warrant documents would impact the ongoing criminal investigation.  ECF Dkt. #19 at 2.  The declaration is thus a part of the search warrant proceedings which are not public or adversary proceedings and "are not part and parcel of any tradition of accessibility."  *Four Contiguous Parcels*, 2006 WL 1779436 at 2 (citations omitted).

Moreover, as in *Four Contiguous Parcels*, the second prong of the First Amendment analysis would not be met in this case even if the first prong were met because disclosure of the declaration would in essence constitute disclosure of the contents of the original affidavit accompanying the

-11-

search warrant documents since the declaration serves to explain and expand upon the contents of the original affidavit. Further, disclosure of the contents of the declaration before any indictment has issued would not play a significant role in the judicial process since no judicial proceedings have occurred or are presently occurring. And finally, public access to the declaration would not play a positive significant role in the ongoing criminal investigatory process and could negatively impact the investigation. Public access to the declaration could lead to the destruction of evidence by those named in the original affidavit and discussed in the declaration and some individuals could flee from jurisdiction if their identities are revealed. In addition, those mentioned in the declaration who may be the subject of the investigation, or witnesses or victims, have no way to exonerate themselves if the contents of the declaration are made public before an indictment, and the privacy and safety of witnesses and informants named in the declaration could be jeopardized if disclosed in expanding upon the original affidavit. Further, if the declaration is made public at this time, individuals named in the declaration could also endure a negative stigmatic effect from merely being named, even though they are uncharged or innocent.

For these reasons, the undersigned recommends that the Court find that the Newspapers have no First Amendment right of access to the declaration of Special Agent Halliden.

### 2. <u>COMMON LAW RIGHT OF PUBLIC ACCESS</u>

The press and the public also have a common law right of access to judicial documents. *Nixon v. Warner Communications, Inc*., 435 U.S. 589, 597-98, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). However, trial courts have supervisory power over their own records and can "seal their records when interests of privacy outweigh the public's right to know." *Id.*; *In re Knoxville News-Sentinel Co., Inc*., 723 F.2d at 474. The court has sound discretion to determine when judicial

-12-

records should be sealed. *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d at 474. In *Four Contiguous Parcels*, the court found that the factors advanced by the Free Press in favor of its common law right of access were favorable to its claim. The Free Press had asserted that release of the pleadings associated with the search warrant would not have a negative impact on the investigation since a long period of time had passed, extensive media coverage existed regarding the investigation into Mr. Hoffa's disappearance and those involved, and the likelihood of prosecution was remote.

Despite these favorable factors, the court found that "the fact that the government has not closed its case on the Hoffa disappearance trumps those favorable factors. Despite the age of the investigation, disclosure of certain sensitive information in the affidavit could potentially lead not only to the destruction of evidence but also to reprisals against witnesses and informants named in the affidavit." *Id.* The court further found that privacy interests outweighed the public's right to know, quoting *Times Mirror v. United States*, 873 F.2d 1210, 1216 (9th Cir. 1989) in finding that additional reasons undermined the Free Press' arguments:

> Persons who prove to be innocent are frequently the subjects of government investigations. Like a bill of particulars, a search warrant affidavit may supply only the barest details of the government's reasons for believing that an individual may be engaging in criminal activity. Nonetheless, the issuance of a warrant-even on this minimal information-may indicate to the public that government officials have reason to believe that persons named in the search warrant have engaged in criminal activity. Moreover, persons named in the warrant papers will have no forum in which to exonerate themselves if the warrant materials are made public before indictments are returned.

*Four Contiguous Parcels*, 2006 WL at 1779436, at *4, quoting *Times Mirror*, 873 F.2d at 1216. The court further noted that the privacy rights of those mentioned in the investigation but who were not its target would be impacted. *Id.*

Similarly in this case, the privacy interests of the people that may be implicated in the investigation, and the interest in protecting the integrity of an ongoing criminal investigation, outweigh the public's right to know the details in the declaration.  If, as advanced by the Government, Special Agent Halliden's declaration does indeed explain and expand upon the original affidavit and "describes and highlights sensitive details set forth in the search warrant affidavit concerning this on-going investigation, and further discusses how disclosure of the sensitive information contained in the search warrant affidavit would seriously jeopardize and impede this on-going criminal investigation," then the Court should accept the re-filing of the declaration as an ex parte document for in-camera review only by the Court.  Allowing access to the declaration would allow access to sensitive information that may result in the destruction of evidence, the flight of individuals from the court's jurisdiction, the violation of individuals' privacy, threats of harm or unfair allegations against innocent and other individuals mentioned in the declaration, and the destruction of the integrity of the ongoing criminal investigation.

For these reasons, the undersigned recommends that the Court find that the Newspapers' right to know and right to access judicial documents is outweighed by the privacy interests surrounding the ongoing criminal investigation in this case.

## III.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court GRANT the Government's motion to re-file the declaration of Special Agent Dennis Halliden as an ex parte document intended for in-camera review only by the Court, without access or viewing by anyone else, including the Newspapers or their counsel.  ECF Dkt. #14.

-14-

The undersigned further recommends that the Court allow the Newspapers time to file a reply brief in support of their amended motion to unseal the search warrant documents following decision on this motion.


Dated: March 9, 2010                              /s/George J. Limbert
                                                  GEORGE J. LIMBERT
                                                  U.S. MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time may constitute a WAIVER of the right to appeal the Magistrate Judge's recommendation.  L.R. 72.3(b).