**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. 5:09 MC 117 |
| ) | |
| THE SEARCH OF FAIR FINANCE, ) | JUDGE SARA LIOI |
| FAIR FINANCIAL, OBSIDIAN ) | |
| ENTERPRISES, AND TIMOTHY S. ) | |
| DURHAM. ) | |
| ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| ) | |
| ) | |

Before the Court is an amended motion to unseal search warrant documents. (Doc. No. 4.) The motion was filed by several newspapers: the Akron Beacon Journal, the Indianapolis Star, the Indianapolis Business Journal, and the Wall Street Journal ("the movants"). The United States of America ("the government"), as an interested party, has filed its opposition to the motion (Doc. No. 11) and the movants have filed a reply (Doc. No. 35). For the reasons discussed below, the motion is **DENIED**.

**I. BACKGROUND**

In this miscellaneous matter, the movants seek an order of this Court unsealing all documents relating to search warrants executed in connection with the search of Fair Finance, Fair Financial, Obsidian Enterprises, and Timothy S. Durham (collectively, "Fair Finance"). The relevant warrants were executed by federal officers on November 24, 2009 at the Indianapolis

office of Obsidian Enterprises, Inc., owned by Mr. Durham, and the Akron office of Fair Finance.

Following the execution of the warrants, a civil complaint was filed by the government in the Southern District of Indiana[1] seeking forfeiture of property owned by Mr. Durham; however, the complaint was dismissed about a week later.[2] The complaint had asserted that Mr. Durham, through Fair Finance, allegedly recruited investors and used the newly-invested monies to pay high interest rates to earlier investors (a classic Ponzi scheme) and/or to loan money to himself, his various businesses, and his colleagues.

The movants have all published articles relating to Fair Finance's dealings and its ability to repay investors.[3] They claim to be representing their own interests and the interests of "hundreds of elderly investors in Akron, Ohio [who] are worried that they [. . .] might have fallen victim to a Ponzi scheme." (Motion at 2.) The movants assert that "transparency in the investigation is the only salve [to the investors], a transparency that has so far been elusive due to the government's failure to file executed search warrants, failure to file affidavits in support of search warrants and failure to file other supporting documentation in connection with its search of Mr. Durham's Indianapolis office at Chase Tower and his Akron, Ohio, offices of Fair Finance." (*Id*.).

---

[1] *See United States of America v. Real Property in Hamilton County, Indiana, at 14353 East 113th Street, Fortville, et al.*, Case No. 1:09cv1460-SEB-DML, filed on November 24, 2009 and voluntarily dismissed on November 30, 2009.

[2] The movants filed this same motion to unseal in the civil forfeiture case while it was pending in Indiana, as reflected on that court's docket. The assigned judge denied the motion because the search warrants related to a criminal matter, not the civil case.

[3] Copies of the articles are attached to the Motion as Exhibits A through D.

## II. DISCUSSION

Fed. R. Crim. P. 41 deals with searches and seizures pursuant to the issuance of a warrant. The relevant section raised by the movants is Rule 41(i) which provides:

> **Forwarding Papers to the Clerk.** The magistrate judge to whom the warrant is returned must attach to the warrant a copy of the return, of the inventory, and of all other related papers and must deliver them to the clerk in the district where the property was seized.

In this case, when the warrant was returned, it was placed under seal by order of the magistrate judge to whom the warrant was returned.[4] As such, the movants' speculation that the government failed to file the search warrants and supporting documents is untrue.

### A.     The Parties' Arguments

The movants argue that Rule 41(i) contemplates that all of the documents relating to the search warrant and its return would be part of a public record and that the delivery to the clerk for inclusion in the public record should be done "within a 'reasonable time' after the warrant is executed." (Motion at 7, quoting *The Baltimore Sun v. Goetz*, 886 F.2d 60, 63 (4th Cir. 1989).)[5]

The movants, citing *Nixon v. Warner Communications*, 435 U.S. 589 (1978), rely on both the First Amendment and the common law as support for their claimed right of access to the search warrant documents.

---

[4] Without objection from any party, this Court has obtained the magistrate judge's entire sealed file to conduct the necessary *in camera* review required to resolve the instant motion.

[5] The movants also assert that LR 49.4 (dealing with the filing of documents under seal) requires that, at the very least, there be a public record of the *fact* that documents have been filed under seal, even if the documents themselves are inaccessible to the public. It is clear from the wording of this local rule that it is intended to govern the conduct of *parties* attempting to file documents under seal. It is not meant to limit the actions of a judicial officer with respect to decisions to seal records.

The government opposes the unsealing of these documents, arguing that the right of access based on either ground is not absolute and that its interest in the integrity of its criminal investigation outweighs any possible right of access in this case.

**B.     Analysis**

"The distinction between the rights [of access] afforded by the first amendment and those afforded by the common law is significant." *The Baltimore Sun*, 886 F.2d at 64. "The common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.1988). The Court will, therefore, examine each argument separately.

    **1.     Common Law Right of Access**

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon*, 435 U.S. at 597 (footnotes omitted). Under the common law, there is a strong presumption "in favor of public access to court proceedings and records." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 720 F.2d 1165, 1179 (6th Cir. 1983) (a case involving access to records in a civil proceeding); *see also Media General Operations, Inc. v. Buchanan*, 417 F.3d 424, 430 (4th Cir. 2005) (affirming order denying mandamus action seeking to unseal search warrant affidavits connected with ongoing investigations of terrorist activities, while recognizing that "[t]he press and the public have a common law right of access to judicial documents").

The right of access, however, "is not absolute." *Nixon*, 435 U.S. at 598. "Every court has supervisory power over its own records and files," *id.*, and the common law right of

access is a decision "best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 599 (footnote omitted). "Because the right is a qualified one, the application of the right in any given context requires a balancing of the competing interests of those who seek access and those who seek to deny it." *In re Search Warrant*, No. M-3-94-80, 1996 WL 1609166, at * 10 (S.D. Ohio Aug. 20, 1996). The presumption of common law access to judicial records "can be rebutted if countervailing interests heavily outweigh the public interests in access[.]" *Virginia Dep't of State Police v. The Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004), *cert. denied*, 544 U.S. 949 (2005).

    The Supreme Court has recognized that "[i]t is difficult to distill from the relatively few judicial decisions a comprehensive definition of what is referred to as the common-law right of access or to identify all the factors to be weighed in determining whether access is appropriate." *Nixon,* 435 U.S. at 598-99. Therefore, "the weighing to be performed by [this Court] is necessarily highly fact and context specific." *In re Search Warrant*, 1996 WL 1609166, at * 10.

    The movants argue that failure to disclose the search warrant materials threatens to harm third parties, namely "innocent investors in Ohio." (Motion at 11.) However, the Court disagrees. Since no criminal charges have yet been filed and, according to the government, the criminal investigation remains ongoing, any "innocent investors" would tend to be more harmed if the investigation were to be compromised by the premature release of information contained in the sealed documents. *See Media General Operations*, 417 F.3d at 431 ("the government's

interest in continuing its ongoing criminal investigation outweighs the petitioners' interest in having the document opened to the press and the public").[6]

In view of the fact that the government's investigation is ongoing, unsealing the relevant records, especially the detailed affidavit in support of the search warrant (all of which this Court has inspected *in camera*) would reveal a virtual "road map" of the government's investigation, investigative techniques and the information derived therefrom, the identities of sources and potential targets of the investigation, and an impression (possibly mistaken) concerning who may or may not be cooperating with the government.[7]

The government's interests outweigh any common law right of access which the movants may possess. Therefore, to that extent, the motion is **DENIED**.

2.  **First Amendment Right of Access**

In contrast to the common law right of access which extends to all "judicial records and documents," *Nixon*, 435 U.S. at 597, the First Amendment right of access has been extended only to particular judicial records and documents. In determining whether the first amendment right of public access extends to a particular type of proceeding or record, the Supreme Court considers "whether the place and process have historically been open to the press

---

[6] The movants assert that the "innocent investors" need access to these materials so as to take legal action on their own to recover funds. Although it is unfortunate that investors have lost access to their funds and may have even lost the funds altogether, the Court believes their desire to pursue a civil action should not trump the government's interest in pursuing a criminal investigation. Further, the Court questions whether the movants, all newspapers, would even have the necessary standing to make this argument on behalf of unnamed, non-party "innocent investors."

[7] The Court acknowledges that, due to the passage of time and the fact that the search warrant has already been executed, the element of "surprise" no longer exists. Obviously, the targets of the search already know what was seized and, by virtue of the search, are "tipped off" as to the possibility that *they* are under investigation. Nonetheless, the Court's *in camera* inspection of the documents has revealed additional information that would compromise any investigation if the documents were to be unsealed.

and general public" and "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8, (1986).

When the First Amendment does provide a right of access, a district court may restrict access "only by proof of a 'compelling governmental interest' and proof that the denial is 'narrowly tailored to serve that interest.' " *The Baltimore Sun*, 886 F.2d at 64 (quoting *Globe Newspaper Co. v. Superior Court of Norfolk County*, 457 U.S. 596, 606 (1982)). The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position. *See Press-Enterprise Co.*, 478 U.S. at 15 ("[t]he First Amendment right of access cannot be overcome by [a] conclusory assertion").

"[B]ecause there is no 'tradition of accessibility' for search warrant proceedings, there is no first amendment right of access to those proceedings." *United States v. Certain Real Property Located in Romulus, Wayne County, Mich.*, 977 F.Supp. 833, 835 (E.D. Mich. 1997), citing *United States v. U.S. District Court for the Eastern Dist. of Mich.*, 407 U.S. 297, 321 (1971) ("a warrant application involves no public or adversary proceedings: it is an *ex parte* request before a magistrate or judge."); *see also Franks v. Delaware*, 438 U.S. 154, 169 (1978) (a proceeding for the issuance of a search warrant "is necessarily *ex parte*, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence").[8]

---

[8] The movants point to *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) and *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984) as "set[ting] the standard for openness in judicial proceedings[.]" (Motion at 6.) However, these cases are distinguishable from the instant matter. *Richmond Newspapers* was a challenge to the closing of the trial of a criminal case. *Press-Enterprise* involved a mandamus petition seeking the release of the transcript of voir dire proceedings in a rape and murder trial and the vacatur of an order closing the voir dire proceedings. Clearly, there is no comparison between search warrant proceedings and actual criminal trials.

As already noted, the government's interest in maintaining the confidentiality of its ongoing investigation is compelling for all the reasons already identified in the discussion on common law right of access. The First Amendment right of access may be restricted, however, only if the restriction is narrowly tailored. The movants argue that redacted copies of the documents may be released. However, the Court's *in camera* review of the records reveals that this would be impractical. A redacted version would involve a large portion of the documents. Further,

> [a]dditional consequences in disclosing the sealed affidavits include: the identity of unnamed subjects not yet charged would be revealed; there may be mistaken notions concerning who might and might not be cooperating with the government or who may be subjects; there may be misunderstandings about the parameters of the government's investigation; the privacy of the innocent and the implicated would be threatened; and the cooperation of present and potential witnesses could be compromised or influenced. [. . .] We agree with the magistrate judge and the district court that disclosure of the affidavits might very likely impair the ongoing criminal investigation.

*Matter of EyeCare Physicians of America*, 100 F.3d 514, 519 (7th Cir. 1996).

### III. CONCLUSION

For the reasons discussed above and after having conducted an *in camera* review of the relevant documents and case file, the Court concludes that the application for the search warrant, along with its attachments (including the affidavit supporting the application) should remain sealed, as should the return of the search warrant.[9] Accordingly, the amended motion to unseal search warrant documents (Doc. No. 4) is **DENIED**.

**IT IS SO ORDERED**.

Dated: August 10, 2010

        **HONORABLE SARA LIOI**
        **UNITED STATES DISTRICT JUDGE**

---

[9] The movants' amended motion was very specific in seeking "an Order unsealing Affidavits, Search Warrants and any other documents [. . .] executed under seal pertaining to the search of Fair Finance, Fair Financial, Obsidian Enterprises and Timothy S. Durham [. . .]." The Court has not considered any other type of relief, such as making the docket public, because no other form of relief was requested in the motion itself and, therefore, was not properly before the Court or fully briefed by the parties.